KNIGHT v GULF & WESTERN PROPERTIES, INC

Docket No. 133214. Submitted June 8, 1992, at Grand Rapids. Decided September 21, 1992, at 9:25 A.M. Leave to appeal sought.

Richard and Lilien Knight brought a premises liability action in the Barry Circuit Court against Gulf & Western Properties, Inc., after Richard, a real estate agent for potential purchasers, fell from an unlit and unmarked interior loading dock of a warehouse offered for sale by the defendant. The court, Patrick H. McCauley, J., entered a judgment for the plaintiffs and awarded damages determined by the jury. The defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in refusing to supplement SJI2d 19.03, the instruction concerning the duty owed by a possessor of a premises to a business invitee, with an instruction that a possessor owes no duty to warn an invitee of an open and obvious danger. Such an instruction is warranted only if the facts at issue could support a determination by the jury that the asserted danger was open and obvious. The facts in this case do not support such a determination.

2. The trial court did not err in denying the defendant's motion for a directed verdict or judgment notwithstanding the verdict. The plaintiffs presented sufficient evidence of a duty of the defendant to warn the plaintiff of dangers inside the warehouse or to take other precautions to protect the plaintiff against harm from those dangers.

3. The trial court did not abuse its discretion in denying the defendant's motion for remittitur, which primarily concerned the jury's award for pain and suffering. That award was neither excessive nor based on sympathy or prejudice.

4. The trial court did not abuse its discretion in denying the

REFERENCES

Am Jur 2d, Premises Liability §§ 87-99, 146-158.

Modern status of rules conditioning landowner's liability upon status of unjured party as invitee, licencee, or tresspasser. 22 ALR4th 294.

Modern status of the rule absolving a possessor of land of liabilty to those coming thereon for harm caused by dangerous physical conditions of which the injured party knew and realized the risk. 35 ALR3d 230.

defendant's motion for a new trial, which was based on alleged improper closing arguments by the plaintiffs' counsel. The arguments were not so egregious or prejudicial that they could not have been cured by a cautionary instruction. Also, they did not divert the jury from the issues or otherwise control its verdict.

5. The trial court did not abuse its discretion in admitting photographs of the interior loading dock taken in lighting conditions brighter than those at the time the plaintiff fell from the dock. The plaintiffs laid a proper foundation for admission of the photographs by offering a witness who testified about his familiarity with the dock and the difference in lighting conditions. The defendant also failed to demonstrate any unfair prejudice resulting from the admission of the photographs.

Affirmed.

NEGLIGENCE — PREMISES LIABILITY — BUSINESS INVITEES — OPEN AND OBVIOUS DANGERS.

The standard jury instruction relating to the duty owed to a business invitee by a possessor of land or a premises may be supplemented with an instruction that the possessor owes no duty to warn an invitee of an open and obvious danger only if the facts at issue can support a determination by the jury that the asserted danger was open and obvious (SJI2d 19.03).

*Miller, Johnson, Snell & Cummiskey* (by *James S. Brady* and *Stephen R. Ryan*), for the plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*), for the defendant.

Before: SHEPHERD, P.J., and CONNOR and M. F. SAPALA,* JJ.

CONNOR, J. Defendant appeals as of right from a judgment entered for plaintiffs in the amount of $608,394.14 in their action for premises liability.[1] The matter was tried before a jury in April 1990. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff Lilien Knight, wife of plaintiff Richard Knight, filed a claim for loss of consortium, derivative of her husband's injuries, and her award is included in the total amount of the final judgment.

I

Plaintiff Richard Knight's injuries resulted from his visit to defendant's vacant warehouse on October 7, 1987. Plaintiff was working as a licensed real estate agent on behalf of potential buyers of the warehouse. Plaintiff was well aware that not all lights in the building were operating, and he even advised the potential buyers to bring flashlights with them when they toured the warehouse to illuminate interior portions that natural light did not infiltrate.

After the potential buyers left the building on October 7, 1987, plaintiff returned to the warehouse to make sure it was secured and all lights were off. As he turned to leave, plaintiff fell off a loading dock approximately four or five feet into the loading dock well. At trial, plaintiff testified that he believed he was in one large room and that the floor went all the way across the room. No warnings or barricades were placed near the edge of the loading dock, and the dock was in an interior portion of the building that witnesses described as very dark. Plaintiff had his flashlight with him, but could not recall if it was on at the time of his fall. Although plaintiff was aware that there were loading docks at the facility, he testified that he did not know that there was a loading dock located inside the building and that he had not been warned about an interior loading dock by defendant or its real estate agent.

When he fell into the dock well, plaintiff injured the left side of his body and he could not put any weight on his leg or use his left arm for support. He tried to slide or crawl to a door for help, but only made it halfway before he ran out of strength. He became chilled and began to fear he would never be found. After approximately two or

three hours, plaintiff was able to shout and attract the attention of Gary Rounds, who worked at a nearby business and had formerly worked in defendant's building.

Plaintiff suffered a comminuted fracture of the upper portion of his left thigh and a comminuted fracture of his left shoulder. Both fractures required surgery to implant metal prosthetic devices. At the time of his injuries, plaintiff was in his late sixties. Although healthy for his age, he had a long stay in the hospital and had to undergo physical and occupational therapy. He now has a reduction in his left leg between the knee and hip, which prevents him from kneeling. His shoulder causes him constant pain, which could be remedied by surgery, but plaintiff elected to forgo the procedure because there could be no guarantee his condition would improve. He has a limited range of motion in his left shoulder, and cannot lift his left arm above shoulder height. Plaintiff has also experienced depression and mood changes.

Plaintiff testified he could not play golf, dance, or do much of the housework or yard work he previously enjoyed if it involved kneeling or overhead movement with the left arm. Plaintiff's orthopedic surgeon believed these were the only limitations caused by the injuries.

The jury found that defendant was negligent in its maintenance of the premises but that plaintiff was also comparatively negligent by twenty percent.

II

The first issue raised by defendant on appeal concerns two of its requested special jury instructions. Both involved open and obvious dangers. The trial court declined to give the instructions

because the standard jury instructions for comparative negligence were adequate to guide the jury.

A trial court may, in its discretion, give instructions not covered by the standard jury instructions, if the instructions accurately state applicable law and are understandable, concise, conversational, and nonargumentative. MCR 2.516(D)(4); *Wengel v Herfert,* 189 Mich App 427, 431; 473 NW2d 741 (1991). The decision whether to give special, supplemental instructions should also take into account the nature of a case, with due regard for the parties' theories and counsel's desire to structure closing arguments around anticipated jury instructions. *Id.*

In this case, the trial court held that, as a matter of law, plaintiff was a business invitee and it instructed the jury regarding the duty owed by a possessor of land to business invitees, SJI2d 19.03:[2]

> It was the duty of the possessor of the land here, Gulf and Western, to exercise reasonable care for the protection of an invitee. They must warn the invitee of dangers of which they know or have created and must inspect the premises, land, place of business to discover possible dangerous conditions of which he does not know. He must take reasonable precautions to protect the invitee from dangers that are foreseeable. However, the possessor is not an insurer of the safety of an invitee and their [sic] duty is only to exercise reasonable care for the invitee's protection. The mere existence of a defect or danger is not enough to establish liability unless it is shown to be of such a character or such duration that it would have been discovered by a reasonably careful person.

[2] SJI2d 19.03 does not address the plaintiff's duty to discover or have reason to know of the defect or danger. However, the instruction for the duty owed to licensees, SJI2d 19.06, includes in part, that the possessor only owes a duty to warn of the condition if the licensee did not know or have a reason to know of the condition and the risk involved, which sounds very much like not having to warn of open and obvious defects.

Defendant wanted the standard instructions to be supplemented to inform the jury that it could not find defendant owed plaintiff a duty if the danger was so open and obvious that plaintiff should have discovered it himself, relying upon *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495, 500; 418 NW2d 381 (1988). Defendant also requested that the jury be separately instructed that plaintiff had a duty to act reasonably for his own safety in discovering dangerous conditions, relying upon *Rice v Goodspeed Real Estate Co,* 254 Mich 49, 55; 235 NW 814 (1931). The trial court denied the requests, but did read defendant's theory to the jury, which emphasized defendant's belief that plaintiff walked into an obviously dangerous place without using the care an ordinary person would use.

Our Supreme Court recently held that possessors of land do not have a duty to warn invitees of open and obvious dangers. *Riddle v McLouth Steel Products Corp,* 440 Mich 85, 92; 485 NW2d 676 (1992). In that case, the claimed defect was a slippery condition on the defendant's plant floor caused by the accumulation of oil that dripped on the floor during a process designed to prevent steel from rusting. While walking through the plant, the plaintiff slipped and sustained severe injuries. The plaintiff contended that he did not realize the area contained oil. The defendant claimed that the plaintiff, a truck driver who made daily deliveries to the defendant's plant, had knowledge of the presence of oil and that, because the danger was obvious, the defendant had no duty to warn.

The Supreme Court reiterated that the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions. *Id.,* p 96. And if the dangerous conditions are hidden or latent, the premises owner is obliged to warn the

invitee of the dangers. *Id.* The Court went on to state that even when the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care to protect the invitee from the danger. However, what constitutes reasonable care is a question for the jury, and there is no absolute duty to warn invitees of known or obvious dangers. *Id.,* pp 96-97.

Under the facts in *Riddle,* the Court found the trial court instructions, which closely tracked the language in SJI2d 19.03, incorrectly informed the jury that a premises owner's duty to warn an invitee of dangerous conditions is absolute and ever present. *Riddle, supra,* p 101.[3]

The instruction found to be objectionable in the *Riddle* case is, for all practical purposes, identical to the instruction in the case at bar. However, the Supreme Court did note that this instruction is "patterned after statements made by Professor Prosser, cited in *Kroll v Katz,* 374 Mich 364, 373; 132 NW2d 27 (1965), and *Wymer v Holmes,* 429 Mich 66, 71, n 1; 412 NW2d 213 (1987). Prosser, Torts (2d ed), p 459." The Court distinguished

---

[3] Normally, an unpreserved instructional error requires reversal only where necessary to prevent manifest injustice. In *Riddle,* the defendant had not requested a proposed instruction on open and obvious dangers, had not objected to the instruction, and, in fact, had requested the jury instruction that was given. The Supreme Court indicated that its intervention was appropriate because "[t]he Court of Appeals articulated an improper conclusion of law, i.e., the abolition of the 'no duty to warn of open and obvious dangers' rule in light of Michigan's adoption of comparative negligence, which demanded clarification by this Court." *Riddle, supra,* p 101, n 15. The decision in *Riddle* overruled a line of cases from this Court on the issue. See *Wert v Afton,* 190 Mich App 3, 5; 475 NW2d 403 (1991); *Novotney v Burger King Corp (On Rehearing),* 188 Mich App 705, 708-709; 470 NW2d 93 (1991); *Pressley v Bruce Post VFW Memorial Home, Inc,* 185 Mich App 709, 710-711; 462 NW2d 830 (1990). But see *DeBoard v Fairwood Villas Condominium Ass'n,* 193 Mich App 240; 483 NW2d 422 (1992) (given the plaintiff's knowledge of a board protruding from a wooden deck, no reasonable person could conclude that the plaintiff was not aware of the risk; therefore the defendant had no duty to warn the plaintiff as a licensee, citing SJI2d 19.06).

those cases because the premises in *Kroll* and *Wymer* contained hidden or latent dangerous defects. *Riddle, supra,* pp 100-101, n 14.

We believe, pursuant to the *Riddle* analysis, that a trial court must instruct the jury that there is no duty to warn an invitee of open and obvious defects if the facts at issue could support a jury determination that the complained-of defect was open and obvious. The Supreme Court has expressly made this issue an initial question of law for the trial court. *Riddle, supra,* pp 95-97, n 11. Because we believe the facts at issue in this case could not support a finding by the jury that plaintiff encountered a known or obvious danger that resulted in his injuries, the trial court's failure to instruct as defendant requested does not require reversal.

In its opinion, the Supreme Court adopted a portion of 2 Restatement Torts, 2d, § 343A, comments e and f, pp 219-220, to offer guidance in determining the scope of the duty owed to invitees for known or obvious dangers:

"e. In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. *If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land.* The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

"f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm." [*Riddle, supra,* p 97, n 11. Emphasis supplied.]

We believe the facts in this case did not establish that plaintiff was aware of the actual condition or that he encountered an open or obvious condition that permitted him the freedom to intelligently choose to incur the risk by remaining on the land and encountering the danger.

The fact that defendant's vacant warehouse was not adequately lit was both obvious and known to plaintiff, but there was no evidence that he was aware or had reason to anticipate that there were interior loading docks that otherwise were not marked or blocked off. Certainly there was no need to warn plaintiff of the dark. However, there was no evidence that plaintiff could intelligently choose not to encounter the hidden risk posed by the recessed loading dock. The claimed cause of plaintiff's injuries was not simply a dark warehouse; the claimed defect that allegedly caused plaintiff's injuries was an unknown, unexpected, and unseen drop-off, which was claimed to be virtually undetectable in the dark interior. Plaintiff was told that there were loading docks, and the exterior docks were open and obvious, but the specific location of one of the docks in the interior of the warehouse was not disclosed and plaintiff had no

reason to know or expect that there were interior docks without a warning from defendant.

For these reasons we believe that the trial court did not err in declining to give defendant's requested special jury instructions regarding open and obvious dangers. The evidence did not create a question of fact regarding whether plaintiff was aware of the dangerous condition or that it was so obvious he could be expected to discover it. The facts at issue in this case pertained only to a hidden or latent condition, and the standard jury instructions were adequate to guide the jury without danger of creating a false impression.

### III

Next, defendant argues that the trial court erred in denying its motion for a directed verdict or for judgment notwithstanding the verdict because plaintiffs' proofs failed to show that defendant breached a duty owed to plaintiff Richard Knight.

In deciding whether to grant a motion for a directed verdict or judgment notwithstanding the verdict, the trial court must examine the testimony and all legitimate inferences that may be drawn from the testimony in a light most favorable to the nonmoving party. *Lester N Turner, PC v Eyde,* 182 Mich App 396, 398; 451 NW2d 644 (1990). The trial court's decision is reviewed to determine if there were material issues of fact upon which reasonable minds could have differed. *Id.* When the evidence is such that reasonable jurors could have disagreed, neither this Court nor the trial court may substitute its judgment for that of the jury. *Id.*

Plaintiffs relied on a theory of negligence. As part of their prima facie case, plaintiffs had to establish that defendant breached a duty owed to

plaintiff Richard Knight. Whether an invitor breached a duty owed to an invitee is a question of fact for the jury. *Perry v Hazel Park Harness Raceway,* 123 Mich App 542, 549; 332 NW2d 601 (1983). An invitor is not relieved of liability as a matter of law just because the invitee may have discovered the danger and taken action to protect himself. The question is whether the invitor can expect invitees to protect themselves against the danger. *Id.,* pp 549-550.

"[W]here the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases, the jury may be permitted to find that obviousness, warning or even knowledge is not enough." (Footnote omitted.) Prosser, Torts (4th ed), § 61, pp 394-395. [*Perry, supra,* p 550.]

See also *Riddle, supra,* pp 96-97; *Ransford v Detroit Edison Co,* 124 Mich App 537, 547-548, n 1; 335 NW2d 211 (1983).

Under the facts of the present case, we believe that the trial court properly allowed plaintiffs' negligence claims to proceed to the jury. Plaintiffs presented sufficient evidence to establish that defendant had a duty to warn plaintiff of the dangers inside the vacant warehouse or to take other precautions to protect plaintiff against harm from those dangers. A jury could find from the evidence that defendant should have been aware that a real estate agent invited to show the property to prospective buyers would choose to enter the dark premises despite the obvious danger caused by the lack of lighting. A jury could also find that the interior recessed loading dock posed a significant

risk if hidden or disguised because of the inadequate lighting. In light of the fact that defendant was aware of the inadequate interior lighting and the inside loading dock, it was for the jury to decide whether defendant should have reasonably anticipated that plaintiff would choose to proceed even when confronted by the obvious danger, and whether defendant took adequate measures to protect plaintiff from harm. To the extent that defendant has argued on appeal that it was entitled to a directed verdict for an open and obvious danger, we are also satisfied that defendant was not entitled to a directed verdict for the reasons discussed in section II, *supra*. The reasonableness of defendant's conduct, as well as plaintiff's conduct, was a question for the jury. *Beals v Walker,* 416 Mich 469, 480-481; 331 NW2d 700 (1982).

IV

Defendant's next issue on appeal is claimed error in the trial court's refusal to order remittitur. Defendant contends that the jury's verdict was excessive and not supported by the evidence.

A trial court's decision regarding remittitur will not be disturbed absent an abuse of discretion. *Palenkas v Beaumont Hosp,* 432 Mich 527, 533; 443 NW2d 354 (1989). Moreover, an appellate court must give due deference to the trial court's superior position to evaluate the witnesses and evidence presented at trial. *Id.,* p 534. The trial court must, however, limit its decision on remittitur to objective considerations relating to the actual conduct of the trial or the evidence presented in determining if the verdict is supported by the evidence. *Id.,* p 532; MCR 2.611(E)(1).

The jury originally found that plaintiff Richard Knight was entitled to the following present and future damages:

| | |
|---|---|
| Past medical expenses | $ 37,505.65 |
| Past pain and suffering | $300,000.00 |
| Future medical expenses | $ 60,000.00 |
| Future lost earning capacity | $ 30,000.00 |
| Future pain and suffering | $120,000.00 |
| | $547,505.65 |
| Plaintiff's comparative negligence (20%) | $\times$ .80 |
| | $438,004.52 |

The jury awarded plaintiff Lilien Knight the following damages:

| | |
|---|---|
| Past damages for care and treatment of plaintiff | $ 35,000.00 |
| Past damages for loss of society and companionship | $ 10,000.00 |
| Future damages for care and treatment of plaintiff | $ 10,000.00 |
| Future damages for loss of services | $ 10,000.00 |
| Future loss of society and companionship | $ 10,000.00 |
| | $ 75,000.00 |
| Plaintiff's comparative negligence (20%) | $\times$ .80 |
| | $ 60,000.00[4] |

The only element of damages seriously in controversy appears to be for pain and suffering, both past and future. Our review of the trial court record and the trial court's decision denying remittitur convinces us that the jury's award for pain and suffering was neither excessive nor based on sympathy or prejudice. Moreover, we are not convinced that this verdict was out of proportion to

[4] The above figures represent the jury's award before the addition of interest, costs, and sanctions, which brought the final judgment for both plaintiffs to $608,394.14.

other, similar cases. Plaintiff has suffered permanent damage to both his leg and arm. Because of his age, these injuries were exceptionally painful and slow to heal. Finally, plaintiff also suffered conscious physical and mental pain while he lay helpless in defendant's vacant warehouse, hoping to be found. Under the limited standard of review that this Court utilizes when considering motions for remittitur, we believe that the trial court did not abuse its discretion by refusing to reduce the jury's award for pain and suffering or for any of the other elements of the verdict defendant argued were excessive or not supported by the evidence.

V

The fourth issue raised by defendant concerns alleged error by the trial court in refusing to grant a motion for a new trial. Defendant contends that a new trial was warranted because of an argument made by plaintiffs' counsel in closing.

The trial court's decision on a motion for a new trial will not be reversed absent a clear abuse of discretion. *Lester N Turner, PC, supra.*[5] In this case, we do not believe the argument of plaintiffs' counsel was so egregious or prejudicial that it could not have been cured by a cautionary instruction. While plaintiffs' counsel may have attempted to deliberately inject improper argument in this case, the comment did not have the effect of di-

[5] This issue was raised in the trial court as a motion for a mistrial, but defendant has argued on appeal as if the motion was for a new trial. Both motions are reviewed according to the abuse-of-discretion standard. *Granger v Fruehauf Corp,* 147 Mich App 190, 206; 383 NW2d 162 (1985), rev'd on other grounds 429 Mich 1; 412 NW2d 199 (1987). However, reversal of a decision to deny a motion for a mistrial should only be made where a miscarriage of justice would otherwise result. *Id.* Under either standard, we do not believe defendant is entitled to relief, because a curative instruction would have rendered any error harmless. *Id.*

verting the jury's attention from the issues or otherwise control the verdict. *Wilson v General Motors Corp,* 183 Mich App 21, 26; 454 NW2d 405 (1990).

## VI

Defendant's final claim on appeal is that the trial court abused its discretion in admitting evidence of photographs of the loading dock area where plaintiff Richard Knight was injured. Defendant argues that the photographs did not accurately depict the lighting in the area at the time of the accident.

To lay a proper foundation for the admission of photographs, a person familiar with the scene depicted in the photograph must testify, on the basis of personal observation, that the photograph is an accurate representation. *In re Robinson,* 180 Mich App 454, 460; 447 NW2d 765 (1989). Photographs may still be admissible despite changes in the scene, as long as someone testifies with regard to the extent of the changes. *Id.,* pp 460-461.

Plaintiffs laid an adequate foundation for the admission of the photographs with the testimony of Gary Rounds. Rounds was familiar with the loading dock area because of his past employment with defendant, and he was also familiar with the lighting conditions on the day of plaintiff's accident because it was Rounds who found plaintiff. Rounds testified that the pictures were a fair and accurate representation of the area, except for the difference in lighting. He explained that at the time he found plaintiff, the dock area was not as well lit.

Defense counsel did not argue below that the lighting in the photographs established that they were unfairly prejudicial, but only argued preju-

dice regarding the angle of the photographs. Nonetheless, the trial court did address the issue of unfair prejudice and found none resulting from the admission of the photographs. We agree. Because Rounds was able to explain the differences in the conditions on the two dates, we fail to see how these exhibits unfairly prejudiced defendant within the meaning of MRE 403. The trial court did not abuse its discretion by admitting the photographs into evidence. *Reisman v Regents of Wayne State University,* 188 Mich App 526, 543; 470 NW2d 678 (1991).

Affirmed.